**WEBSTER COUNTY, Kentucky, Appellant,**

v.

**Damon A. VAUGHN, Appellee.**

Court of Appeals of Kentucky.

Dec. 7, 1962.

As Modified on Denial of Rehearing
March 15, 1963.

Warren B. Miller, Dixon, Earle M. Nichols, Madisonville, for appellant.

Damon A. Vaughn, Thomas L. Withers, Dixon, for appellee.

STANLEY, Commissioner.

This is a companion of Webster County v. Nance, Ky., 362 S.W.2d 723. It is an action by Webster County to recover of Damon A. Vaughn, former county attorney, sums alleged to have been received by him in his official capacity in excess of $5,-000 a year for 1954 through 1957. The circuit court found that the appellee collected $12,151.48, $14,905.92, $11,791.85 and $14,210.49, respectively. Legitimate expenses would have to be deducted from these amounts to ascertain his net receipts. The major part of the fees Mr. Vaughn received came from Justice of the Peace R. T. Nance as costs exacted by him of traffic offenders. The circuit court found that Mr. Vaughn's compensation had been fixed before the beginning of his term at $7,200 a year; that there had been a complete settlement and release of claims against him covering the year 1954, and that the county could not recover any of the illegal fees paid him by the magistrate. The result was that, eliminating these items of illegal collections, the county was not entitled to recover any sum because the bal-ance over expenses did not exceed $7,200 in any year.

■■■ As described in the opinion in his case, Justice Nance had collected a fee of $5.00 as costs for the county attorney from each of the many defendants and paid it to him. These sums aggregated $5,610, $8,620, $6,565 and $8,410 for the respective four years. The balance of total amounts received, as above stated, is made up of salary of $1,500 per year, relative small sums as fees from other magistrates, commissions on fines and forfeitures and on delinquent tax collections.

The statute, KRS 69.260(2), provides that when a fine of less than $25 is recovered in a magistrate's court, the county attorney shall be allowed a fee of $5 to be taxed as costs. Another statute, KRS 455.040, provides that the magistrate shall give written notice to the county attorney of the time and place of a trial of a criminal case and that his presence is requested. KRS 64.-410(2) prescribes that no officer shall demand or receive any fee for services not actually rendered. It was admitted in this case that the county attorney was given no notice and was not present and did not take any part whatsoever in the prosecution of any of the cases before Justice Nance or perform any services in connection therewith. The trial court properly held that Mr. Vaughn was not entitled to these fees, Funk v. Milliken, Ky., 317 S.W.2d 499, and that the payment to him was illegal.[1] Upon the ground of illegality, for the reasons we have stated in the Nance case, the court was in error in holding that the county could not recover the fees. The county was entitled to recover fees of the county attorney. As in the Nance case, the action was confined to excessive compensation; but, as we have held in reversing that case (Webster County v. Nance, Ky., 362 S.W.2d

---

1. It is fair to say that until the Funk case was decided in June, 1958, there had been no interpretation of the statutes that a county attorney was not entitled to receive the fees from justices of the peace unless he rendered actual service in the cases. The contrary was assumed until that time, not only in Webster but other counties as well.

723), the county, if it so desires, may amend its complaint to include all illegal fees.

The complaint sought only to recover amounts in excess of $5,000, charged to have been the maximum compensation fixed by the fiscal court for the term beginning in January, 1954. Issues were raised as to whether an order of May 5, 1953, purporting to fix the maximum compensation of the county attorney, was timely made, and whether the maximum compensation had been, in fact, fixed at $7,200 rather than $5,000. This last issue was dependent upon whether a change had been wrongfully and illegally made in the order book of the fiscal court substituting $7,200 for $5,000.

■ The statute provides that the fiscal court shall fix the compensation of every county officer "not later than the first Monday in May in the year in which such officers are elected," and that upon failure to do so the compensation shall be the same as that fixed for the preceding term. KRS 64.-530, 64.730. See Upton v. Whitley County, Ky., 256 S.W.2d 3. The fiscal court of Webster County met on May 5, 1953, which was the first Tuesday of the month. The question is the effect of having been one day too late according to the language of the statute.

It seems to us that it is too stringent an interpretation of the statute to invalidate the act of the fiscal court because it came one day later than the Act specifically provided. The purpose of the statute is to have salaries fixed before the election and the assumption of office on the first day of January following. There is no universal or inflexible rule by which directory provisions in statutes may in all circumstances be distinguished from those which are mandatory. Generally, the provision as to time is directory and not a limitation of authority. If there is a substantial compliance with the terms of the statute relating to time and mode so as to effectuate its purpose or accomplish the end and no harm results, the provision must be deemed directory and a slight variation, such as here

existed, ought not to and does not invalidate the proceeding. McCreary v. Speer, 156 Ky. 783, 162 S.W. 99; Ewing v. Union Central Bank, 254 Ky. 623, 72 S.W.2d 4; Middleton's Adm'x v. Middleton, 297 Ky. 109, 179 S.W.2d 227. The order cannot be invalidated on this account.

■ The order of the fiscal court of May 5, 1953, dealt with a number of matters, particularly with the salaries of the county officers for the terms which should begin on January 4, 1954. The order definitely fixed the salary of the county attorney, payable by the county as $1,500 and "that his compensation as such county attorney be limited to $7,200 per year from salary and fees." The county has maintained in this suit that the limitation was actually fixed at $5,000 and that that figure was erased and $7,200 written in. The photostat before us sustains the testimony that an erasure had been made before the $7,200 figure was typed. It also shows other erasures and new figures which have no relation to the present suit. A handwriting expert gave vivid demonstrative testimony that such change was made. It appears that the minutes—rather roughly made—do not reveal that the matter of salaries of the county officers was brought up before the county court. But the signed order is clear and definite and must be regarded as controlling. There is no evidence as to when or by whom the erasure and substitution, if any, were made. For aught that appears there was mere error and correction by the typist. Mr. Vaughn did not testify, and his silence is pointed out as creating a presumption against him.

The subsequent procedures and actions of the fiscal court treated the maximum salary as having been set at $7,200. The trial court inspected the original order book and found from that examination and the inferences that the maximum was originally fixed at $7,200. We cannot say his finding is clearly erroneous. CR 52.01.

As stated, the trial court sustained the defense that the fiscal court had accepted

the payment of $1,398.34 in full settlement of all claims to excess fees for the year 1954. .

The fiscal court, by order of December 4, 1956, referred to an itemized statement of receipts and disbursements which the county attorney had submitted to it and recited that the court had accepted and approved the same. It ordered that in consideration of the payment of $1,398.34 to the treasurer, the county released any claim it "may have against said Vaughn on account of excess fees which were collected by him" during the year, and that the claim "is hereby compromised and settled and the said Vaughn released from all claims the county has or may have against him for excess fees received during said period." The county attorney had received from Justice of the Peace Nance fees amounting to $5,610 in that year. It appears the receipts were regarded as legal and that the sum entered into the settlement. It was stipulated in the case that the claim "was then and there unliquidated and in dispute."

■■■ The appellant argues the settlement is not binding upon the county because, as a matter of fact, the sum owing at the time was $516.20 more than stated in the settlement filed by the county attorney. The cases relied upon by the appellant involve merely the acceptance of statements of amounts owed by public officers. Among them are Commonwealth v. Nunnelley, 211 Ky. 409, 277 S.W. 506; Goodlet v. Anderson County, 267 Ky. 166, 101 S.W.2d 421.

The settlement of a controversy between knowledgeable parties as to an unliquidated claim ordinarily bars the recovery of the remainder of the claim which subsequent events show that one of the parties may have been liable for. Ordinarily the compromise and settlement would be conclusive and binding upon the county. Shipp v. Rodes, 219 Ky. 349, 293 S.W. 543; Roberts v. Fiscal Court of McLean County, 244 Ky. 596, 51 S.W.2d 897; Steele v. Taylor, 272 Ky. 11, 113 S.W.2d 423.

But we have here the inclusion in the account of fees illegally paid to the officer, and at least a gross misapprehension of the law which entered into the settlement. The county attorney was the legal advisor of the fiscal court and knew, or should have known, he had collected fees he was not entitled to under the law. The compromise suggests that the parties were not dealing at arm's length. The statutes were clear that this much of the claim of the county attorney and agreed to by the fiscal court was illegal. It was written in 1846 that a fraud or mistake made by the officer of a regiment in a settlement with a paymaster could be inquired into on the trial of the paymaster for a supposed delinquency. Fox v. Miller, 46 Ky. 125, 7 B.Mon. 125. A compromise settlement by a sheriff with a county, based on a mutual mistake, whether of fact or law, has several times been opened up for correction. Titus v. Rochester German Ins. Co., 97 Ky. 567, 31 S.W. 127, 28 L.R.A. 478, 53 Am.St.Rep. 426; Cheek v. Commonwealth Life Ins. Co., 277 Ky. 677, 126 S.W.2d 1084; Alexander v. Owen County, 136 Ky. 420, 124 S.W. 386; Creson v. Carmody, 310 Ky. 861, 222 S.W.2d 935; Burchett v. Leslie, Ky., 311 S.W.2d 551.

In treating the effect of official compromises or settlements it is said in 43 Am. Jur., Public Officers, § 324, that "there is not the same conclusiveness which attaches to the settlement of accounts and financial matters between individuals," and if officers by mistake or otherwise wrongfully retain public money in their hands, they may be proceeded against upon discovery of the facts at any time within the statutory period of limitations. It is further stated in that section that where an official settlement is beyond the lawful authority or capacity of the parties, it is to that extent void. In note 103 A.L.R. 1071 it is said: "If a compromise agreement or release of liability exceeds the lawful authority or capacity of the parties, it may be set aside." In many of our cases of compromise and settlement with public officials the disputes

related to the amounts collected or expenses or credits to which the officers were entitled. In this case the illegally collected fees could not be transformed into legal fees merely by the belief of the parties. A compromise may not be founded upon a baseless and inherently illegal and void consideration. 11 Am.Jur., Compromise and Settlement, §§ 7, 8.

We are of opinion the trial court was in error in holding the 1954 settlement binding on the county.

The judgment is reversed and case remanded for proceedings not inconsistent with the opinion.

Reversed.

PALMORE, J., not sitting.